UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| **CASHMAN EQUIPMENT CORP.,** | ) |
| *Plaintiff,* | ) |
| vs. | ) |
|  | ) Civil Action No. |
| **EMCs CARIBBEAN LTD., CRAIG NOBLETT, NERVIN WHEATLEY, and ASHBURN HARRIGAN,** | ) |
| *Defendants.* | ) |

### COMPLAINT (WITH JURY DEMAND)

Plaintiff, Cashman Equipment Corp., for its Complaint against Defendants, EMC<sup>S</sup> Caribbean Ltd. ("EMCS"), Craig Noblett ("Noblett"), Nervin Wheatley ("Wheatley"), and Ashburn Harrigan ("Harrigan"), states and alleges as follows:

### PARTIES

1. Plaintiff Cashman Equipment Corp. ("Cashman") is a Massachusetts corporation with its principal place of business at 60 Brooks Road, Braintree, Norfolk County, Massachusetts 02184. Cashman is the owner of the deck barge, JMC 50.

2. Defendant EMCS Caribbean Ltd. ("EMCS") is a foreign corporation, believed to be domiciled in Tortola, British Virgin Islands, but doing business in the Commonwealth of Massachusetts.

3. Defendant Noblett is a person of the age of majority and upon information and belief is a resident of the British Virgin Islands. Defendant Noblett is a director of EMCS.

4. Defendant Wheatley is a person of the age of majority and upon information and belief is a resident of the British Virgin Islands. Defendant Wheatley is a director of EMCS.

5. Defendant Harrigan is a person of the age of majority and upon information and belief is a resident of the British Virgin Islands. Defendant Wheatley is a director of EMCS.

## JURISDICTION AND VENUE

6. Jurisdiction is proper in this Court pursuant to 28 U.S.C. §1333, in that this is an action arising out of multiple torts related to a barge and is therefore related to maritime activities.

7. Alternatively, jurisdiction is proper in this Court pursuant to 28 U.S.C. §1332, in that this is an action between completely diverse parties and Plaintiff's claims against the Defendants, individually and collectively exceed $75,000.00.

8. Venue is proper before this Honorable Court insofar as that within this District, the Defendants fraudulently induced Cashman to entrust them with possession of the barge JMC 50, transmitted false representations to Cashman in this District, and the damages caused by Defendants' tortious actions have been sustained within this District.

## FACTS APPLICABLE TO ALL COUNTS

9. In early 2018, Defendant Wheatley contacted Cashman about chartering a barge. Cashman agreed to modify its barge, the JMC 50, with bin walls and other improvements consistent with requirements relayed by Defendant Wheatley. During the course of these communications, Wheatley identified himself as a Director of EMCS.

10. The Defendants, ostensibly acting through their corporate shell EMCS, executed a Charter Lease/Vessel Purchase Agreement (the "Contract"), effective March 20, 2018 for the JMC 50. The Contract executed by the parties required EMCS to pay charter hire of $1,300 per day and to maintain certain insurance coverages.

11. Within months of taking the barge, Defendants, as Directors of EMCS, caused it to fall into arrears by failing to pay the charter hire owed.

12. Cashman made numerous attempts to discuss the failure to pay, with no success.

13. Cashman also subsequently learned that Defendants had failed to maintain insurance on the barge, as contractually required.

14. Eventually, Defendants stopped responding to Cashman and refused to even advise Cashman of the location of the JMC 50.

15. Through its own efforts, Cashman was able to determine that Defendants had been maneuvering the barge around the Caribbean to avoid detection by Cashman.

16. Cashman learned of the vessel's presence at Grenada, but Defendants removed it before Cashman could retake it.

17. Finally, in early 2020, Cashman located the barge in Trinidad & Tobago.

18. Defendants had bypassed customs when they brought the barge into Trinidad, presumably to avoid detection.

19. Cashman dispatched a local service provider to retake the barge, but Defendants or their agents refused to release the barge.

20. Left with no other option, Cashman instituted an *in rem* action in Trinidad and had its own barge seized by judicial order.

21. Once the JMC 50 was arrested, Defendants then appeared in the Trinidad action and fraudulently asserted a competing claim of ownership of the vessel.

22. Defendants provided nothing in support of their patently absurd claim and Cashman is presently utilizing Trinidad counsel to have the fraudulent claim of ownership

dismissed. A combination of the Trinidad court system's structure and COVID-19 have caused this action to languish for months.

23. In March 2021, Cashman communicated with Defendants Noblett and Harrigan. Defendant Noblett claimed to be ignorant of the extent of unpaid charter hire and the specious assertions of ownership.

24. For the purposes of this action, it matters not whether Defendant Noblett's professed lack of knowledge was true. Even after he and Defendant Harrigan were explicitly advised of what had transpired, all the Defendants continued on their fraudulent path to attempt to gain possession of Cashman's barge via illegitimate methods.

## CLAIMS FOR RELIEF

### Count I

### (Fraud)

25. Plaintiffs incorporate by this reference each and every allegation of each of the preceding paragraphs of this Complaint.

26. Defendants made numerous false statements to Cashman after it took possession of the JMC 50. Specifically, Defendants knowingly misrepresented to Cashman they had wired funds on October 18, 2019, when they full well knew same was false.

27. Defendants lied to Cashman about wiring funds on November 14, 2019. Again, they were fully aware this was false.

28. Defendants lied to Cashman about wiring funds on December 23, 2019. Again, they were fully aware this was false.

29. In January 2020, Defendants promised payments totaling $160,000. Only $21,000 was sent.

30. Defendants also committed fraud by omission on multiple occasions in 2019 and 2020 when they refused to advise Cashman of the location of its barge.

31. After Cashman was forced to arrest its own barge in Trinidad, the Defendants continued their fraud by instructing their local counsel to submit false claims in the judicial proceeding. These false claims include:

    a. the assertion of an ownership right/interest in the barge;

    b. the alternative claim that they are entitled to possess the barge by virtue of the Contract;

    c. that they made all insurance premium payments for the barge;

    d. that Cashman holds funds belonging to them and has refused to return same;

    e. that they made all payments owed per the Contract.

32. Defendants have knowingly made false statements in the Trinidad action to either gain possession or control of Cashman's barge and/or to cause financial damage to Cashman.

## Count II

### (Violation of Covenant of Good Faith and Fair Dealing)

33. Plaintiffs incorporate by this reference each and every allegation of each of the preceding paragraphs of this Complaint.

34. The Contract between Cashman and EMCS was a valid and enforceable contract. Notably, Defendants' breach of contract is not claimed herein insofar as it is pending in Trinidad.

35. Defendants' actions recited herein including refusing to return the barge, refusing to disclose the whereabouts of the barge, and numerous false statements to facilitate its

illegitimate possession of the barge all had the effect of destroying or injuring Cashman's right to receive the fruits of the Contract.

36. The Contract allowed Defendants to possess the barge and operate it in the Caribbean. However, Defendants improperly leveraged these permissions by hiding the barge and refusing to return it.

## Count III

### (Fraudulent Inducement, Detrimental Reliance, and Unjust Enrichment)

37. Cashman incorporate by this reference each and every allegation of each of the preceding paragraphs of this Complaint.

38. Defendants made representations to Cashman regarding its ability and willingness to remit charter hire payment and to maintain appropriate insurances, all of which were intended to induce Cashman to rely upon same.

39. Cashman reasonably relied upon Defendants' representations. However, after Defendants took Plaintiff's barge, it finally became evident that Defendants had no intention of paying what they owed, nor returning the barge. Defendants' assertions were made to cover their true intentions. Cashman was damaged as a result.

40. After Defendants took Cashman's barge, it became evident they intended to act in a manner prejudicial to Cashman and they were unjustly enriched at Cashman's expense.

41. Defendants are therefore liable to Cashman for its damages sustained as a result of their fraudulent inducement to trick Cashman into contracting, Cashman's detrimental reliance upon Defendants' representations and Defendants' unjust enrichment at Cashman's expense.

## Count IV

### (Intentional and/or negligent Interference with Contract)

42. Cashman incorporates by this reference each and every allegation of each of the preceding paragraphs of this Complaint.

43. Defendants Wheatley, Noblett, and Harrigan negligently and/or intentionally interfered with the Contract between Cashman and EMCS.

44. At all times, Defendants Wheatley, Noblett, and Harrigan were aware of the Contract between Cashman and EMCS and owed a duty to not interfere with same.

45. Defendants Wheatley, Noblett, and Harrigan acting either negligently or intentionally did interfere with the Contract by preventing EMCS from fulfilling its duties owed to Cashman, including but not limited to paying charter hire, insuring the barge and not concealing the barge from Cashman.

## Count V

### (Unfair and Deceptive Acts and Practices)

46. Cashman incorporates by this reference each and every allegation of each of the preceding paragraphs of this Complaint.

47. As alleged above, Defendants engaged in a sequence of highly improper acts and omissions that included numerous false statements to Cashman, obscuring or concealing the location of the JMC 50, and lodging false claims in a Trinidad court proceeding.

48. Defendants' acts and omissions reveal a scheme to utilize a corporate shell as a pretext to using Cashman's barge without paying for same, hide the barge from Cashman, and make false claims in a foreign judicial proceeding.

49. These acts and omissions set forth above constitute unfair and deceptive acts and practices, within the meaning of M.G.L. ch. 93A § 2 and the regulations of the Attorney General promulgated pursuant thereto.

50. At all times material to this matter, Defendants and Cashman were involved in the conduct of trade or commerce within the Commonwealth of Massachusetts within the meaning of M.G.L. ch. 93A § 2(a).

51. These acts and omissions of Defendants were willful and knowing violations of M.G.L. ch. 93A § 2, within the meaning of M.G.L. ch. 93A § 11.

52. As a direct and proximate result of these unfair and deceptive acts and practices, Cashman has suffered substantial injury and damages.

## Count VI

### (Civil Conspiracy)

53. Cashman incorporates by this reference each and every allegation of each of the preceding paragraphs of this Complaint.

54. As alleged herein, the Defendants entered into a common tortious plan and scheme to induce Cashman into handing over its barge and then refuse to pay for the barge and attempt to make it their own. When Cashman finally caught up with its barge, Defendants continued their efforts to claim the barge as theirs by making patently false statements to a Trinidad court.

55. Each of the Defendants provided substantial assistance to the other Defendants in the execution of this tortious plan, with knowledge that such assistance was contributing to this tortious plan.

56. As a result, each of the Defendants is liable, jointly and severally, for all the damages, injuries and losses sustained by Cashman as a result of each Defendant's tortious acts and omissions alleged above.

## Count VII

## (Alter Ego Liability)

57. Cashman incorporates by this reference each and every allegation of each of the preceding paragraphs of this Complaint.

58. Upon information and belief, Defendants Wheatley, Noblett and Harrigan are the sole equity holders and directors of EMCS.

59. Upon information and belief, Defendant's shell company, EMCS, is in the business of property development in the British Virgin Islands and does not engage in the business of hauling aggregate.

60. Upon information and belief, Defendant Wheatley engages in the business of aggregate hauling, but not Defendants Noblett and Harrigan.

61. Upon information and belief, Defendants Noblett and Harrigan are aware of Defendant Wheatley's activities in the aggregate hauling activities and permitted Wheatley to do so under the auspices of EMCS.

62. Upon information and belief, Defendants Wheatley, Noblett, and Harrigan failed to follow appropriate corporate formalities in the operation of EMCS and utilized its corporate status to perpetrate fraud and also generally failed to maintain the appropriate distinctions that would permit EMCS to be treated as an independent legal entity separate from them.

63. Accordingly, the corporate alter ego of EMCS should be disregarded. Further, in the event EMCS is unable to satisfy any liabilities attributable to it, Defendants Wheatley, Noblett, and Harrigan should be held personally liable for same.

64. Cashman re-pleads all allegations and causes of action herein against EMCS against Defendants Wheatley, Noblett, and Harrigan, personally, as if copied herein, *in extenso*.

## JOINT AND SEVERAL LIABILITY

65. The parties made Defendants herein are jointly and severally liable.

## DEMAND FOR JURY TRIAL

66. Cashman demands a jury trial on its claims set forth in this Complaint and every defense and counterclaim asserted thereto.

## DEMAND FOR RELIEF

**WHEREFORE**, Plaintiff Cashman Equipment Corp. demands the following relief:

A. On Count I, that the Court enter judgment against Defendants EMCS Caribbean Ltd., Nervin Wheatley, Craig Noblett and Ashburn Harrigan, jointly and severally and in favor of Cashman Equipment Corp. in an amount equal to the losses and damages it has suffered as a result of Defendants' fraudulent acts and omissions.

B. On Count II, that the Court enter judgment against Defendants EMCS Caribbean Ltd., Nervin Wheatley, Craig Noblett and Ashburn Harrigan, jointly and severally and in favor of Cashman Equipment Corp. in an amount equal to the losses and damages it has suffered as a result of Defendants' violation of the Covenant of Good Faith and Fair Dealing.

C. On Count III, that the Court enter judgment against Defendants EMCS Caribbean Ltd., Nervin Wheatley, Craig Noblett and Ashburn Harrigan, jointly and severally and in favor of Cashman Equipment Corp. in an amount equal to the losses and damages it has suffered as a result of Defendants' fraudulent inducement, creation of detrimental reliance and unjust enrichment.

D. On Count IV, that the Court enter judgment against Defendants EMCS Caribbean

Ltd., Nervin Wheatley, Craig Noblett and Ashburn Harrigan, jointly and severally and in favor of Cashman Equipment Corp. in an amount equal to the losses and damages it has suffered as a result of Defendants' intentional and/or negligent interference with the Contract.

   E.  On Count V, that the Court enter judgment against Defendants EMCS Caribbean Ltd., Nervin Wheatley, Craig Noblett and Ashburn Harrigan, jointly and severally and in favor of Cashman Equipment Corp. in an amount equal to three times the losses and damages it has suffered as a result of Defendants' unfair and deceptive practices and acts, together with an award of Cashman's legal fees.

   F.  On Count VI, that the Court enter judgment against Defendants EMCS Caribbean Ltd., Nervin Wheatley, Craig Noblett and Ashburn Harrigan, jointly and severally and in favor of Cashman Equipment Corp. in an amount equal to the losses and damages it has suffered as a result of Defendants' civil conspiracy.

   G.  On Count VII, that the Court enter judgment against Defendants Nervin Wheatley, Craig Noblett and Ashburn Harrigan, jointly and severally and in favor of Cashman Equipment Corp. in an amount equal to the losses and damages it has suffered as a result of Defendants' acts and omissions.

H. That the Court award Plaintiff pre- and post-judgment interest, attorneys' fees, costs, expenses of litigation, and all such other relief, at law, admiralty, and equity, as the Court deems just and appropriate.

          **CASHMAN EQUIPMENT CORP.,**
          Plaintiff,
          By its attorney,

          */s/ Stephen W. Rider*
          Stephen W. Rider, Esq., BBO # 419820
          Stephen W. Rider, P.C.
          350 Lincoln Street – Suite 2400
          Hingham, MA 02043
          Tel:  781-740-1289
          Fax:  781-207-9160
          Email: stephen.rider@swrpc.com

Dated:  May 24, 2021

*Application for pro hac vice admission pending:*

Scott D. Brownell (Louisiana Bar #26223)
***S*COTT D. B*ROWNELL*, APLC**
527 E. Boston St., Suite 201
Covington, LA  70433
Phone: (985) 801-0055
Fax:  (985) 387-5087
E-mail: scott@sbrownell.com

*Attorney for Cashman Equipment Corp.*